**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

JOSEPH DANIEL HUGHES,

      Petitioner,

    v.                                                        Case No.:  6:26-mc-00015-PGB-LHP

UNITED STATES SECURITIES
AND EXCHANGE COMMISSION,

      Respondent,

---

### ORDER

Before the Court is *pro se* Petitioner Joseph Daniel Hughes' Motion for Order Pursuant to Customer Challenge Provisions of the Right to Financial Privacy Act of 1978 (12 U.S.C. § 3410).  Doc. No. 1.  Petitioner also submitted with the filing a declaration in support and a certificate of service.  Doc. Nos. 2, 3.  *See also* 12 U.S.C. § 3410(a).  Upon Court Order, Petitioner has also submitted a copy of the Subpoena and the Customer Notice at issue.  Doc. Nos. 5-1, 9-1; *see also* Doc. Nos. 4, 7.  Respondent the United States Securities and Exchange Commission ("SEC") has filed a verified response.  Doc. No. 8.  *See also* 12 U.S.C. § 3410(b).  Upon

-1-

consideration of the parties' respective filings and applicable law, Petitioner's motion (Doc. No. 1) will be **DENIED**.[1]

## I.      BACKGROUND.

On April 23, 2026, the SEC issued a Subpoena to Wells Fargo Bank, N.A. ("Wells Fargo"), in connection with its investigation titled "In the Matter of ZenChip Prime Corp. (C-09130)."  Doc. No. 5-1; *see also* Doc. No. 9-1.  The SEC seeks to obtain Petitioner's financial records from Wells Fargo, pursuant to a formal order of investigation.  *Id.*  According to the SEC's verified response to Petitioner's request to quash said subpoena:

> On July 14, 2025, the [SEC] issued an Order Directing a Private Investigation and Designating Officers to Take Testimony in the *Matter of ZenChip Prime Corp.* (C-09130-A) ("Formal Order").  The Formal Order states that the Commission has information tending to show that "ZenChip Prime Corp. and Duke Pro Max Inc., their officers, directors, employees, partners, subsidiaries, and/or affiliates and/or other persons or entities" may have been or may be engaging in violations of the [certain enumerated] federal securities laws[.]

Doc. No. 8, at 2.  SEC staff are currently investigating payments that investors made for their investments in ZenChip and Duke Pro Max, and the SEC explains:

---

[1] 12 U.S.C. § 3410(d) provides that "[a] court ruling denying a motion or application under this section shall not be deemed a final order and no interlocutory appeal may be taken therefrom by the customer."  Accordingly, the undersigned deems an Order, rather than a recommendation, on Petitioner's motion appropriate.  *See, e.g.*, *Highguard Cap., L.P. v. United States Sec. & Exch. Comm'n*, No. 1:21-MI-00094-MHC-AJB, 2021 WL 9638511, at \*2, n. 2 (N.D. Ga. Dec. 7, 2021) (concluding same); *see also Berkman v. United States Sec. & Exch. Comm'n*, No. 8:12-mc-66-T-17TGW, 2012 WL 12905321, at \*1 (M.D. Fla. Aug. 7, 2012) (addressing similar motion by order of Magistrate Judge).

ZenChip Prime Corp. ("ZenChip") is a purported block chain, payment processing, and digital marketing company, and Duke Pro Max Inc. ("Duke Pro") is a purported gaming accessory company. Pursuant to the Formal Order, SEC Staff are investigating whether individuals associated with these entities may have sought investments in either company or in a license agreement between them and then misappropriated investor funds.

ZenChip's Annual Report to the State of Florida identifies Hughes as an "Officer/Director" of ZenChip. In addition, SEC Staff have evidence that Hughes solicited investments in ZenChip from the public. Staff also have evidence that ZenChip promised potential investors returns of 25 times their investment within approximately 90 days of payment and suggested a minimum investment of $1,000. Those communications instructed investors to deposit investment funds in a ZenChip bank account, a Duke Pro bank account, or a ZenChip Zelle account or to transfer funds via crypto currency. These communications also stated that investors could receive a "10% bonus" if they convinced others to invest. Neither ZenChip nor Duke Pro filed a registration statement regarding this offering with the Commission.

Staff also have evidence that nineteen individuals invested approximately $281,000 in ZenChip between January 2022 and February 2026 and that thirty-five individuals invested approximately $1,473,000 in Duke Pro between January 2024 and February 2026.

Staff have evidence that ZenChip received more than $250,000 from a Wells Fargo account held in Hughes' name. Further evidence tends to show that, during roughly the same period, approximately $121,000 was transferred from a ZenChip bank account to Hughes' personal bank account at Wells Fargo.

*Id.* at 3–4; *see also* Doc. No. 8-1 (verification of facts stated in opposition).

Thus, by the subpoena to Wells Fargo, the SEC seeks records of Petitioner's financial accounts to determine if Petitioner received funds from investors in ZenChip, and if so, whether Petitioner used those funds for personal purposes or

otherwise transferred them. Doc. No. 8, at 5. The financial information may provide information about Petitioner's involvement in soliciting investments from ZenChip and Duke Pro, and may also assist in locating funds that are subject to disgorgement, identify investors who may have been defrauded, or identify other persons involved in potentially illegal schemes. *Id.*

## II. ANALYSIS.

Petitioner seeks to quash the Wells Fargo subpoena under 12 U.S.C. § 3410, which governs Customer Challenges under the Right to Financial Privacy Act ("RFPA"). Doc. No. 1. The RFPA provides, in relevant part:

> **(a) Filing of motion to quash or application to enjoin; proper court; contents**
>
> Within ten days of service or within fourteen days of mailing of a subpena, summons, or formal written request, a customer may file a motion to quash an administrative summons or judicial subpena, or an application to enjoin a Government authority from obtaining financial records pursuant to a formal written request, with copies served upon the Government authority. A motion to quash a judicial subpena shall be filed in the court which issued the subpena. A motion to quash an administrative summons or an application to enjoin a Government authority from obtaining records pursuant to a formal written request shall be filed in the appropriate United States district court. Such motion or application shall contain an affidavit or sworn statement—
>
> **(1)** stating that the applicant is a customer of the financial institution from which financial records pertaining to him have been sought; and
>
> **(2)** stating the applicant's reasons for believing that the financial records sought are not relevant to the legitimate law enforcement inquiry stated by the Government authority in its notice, or that there has not been substantial compliance with the provisions of this chapter.

12 U.S.C. § 3410(a).[2]

In this case, Petitioner provides a sworn statement stating that he is a customer of Wells Fargo, and that he seeks to quash the Wells Fargo subpoena on the following grounds: (1) he has no business relationship with Duke Pro Max; (2) a former business associate engaged in activity without Petitioner's authorization; (3) the records requested by the subpoena are not relevant because there were no transactions between Petitioner and Duke Pro Max, there "was no financial relationship," and there "was no participation in any fundraising activity"; (4) the subpoena is overbroad and would require disclosure of personal financial activity, transactions unrelated to the SEC's investigation, and information regarding third parties with no connection to Duke Pro Max; and (5) Petitioner has fully cooperated with the SEC to date by providing requested information and engaging in communication with investigators.   Doc. No. 2.

"The RFPA provides only three grounds on which the district court may quash a subpoena: (1) the agency's inquiry is not a legitimate law enforcement inquiry or (2) the records requested are not relevant to the agency's inquiry or (3) the agency has not substantially complied with the RFPA."   *Hornaday v. United*

---

[2] There is no dispute that Petitioner's motion was timely filed on May 1, 2026, as the Customer Notice is dated April 23, 2026, and the SEC states that it sent the notice to Petitioner on April 24, 2026, and it was delivered to Petitioner's home on April 27, 2026. *See* 12 U.S.C. § 3410(a).

*States Sec. & Exch. Comm'n*, No. 6:17-mc-15-Orl-37TBS, 2017 WL 11696742, at *3 (M.D. Fla. Apr. 5, 2017), *report and recommendation adopted*, 2017 WL 11696741 (M.D. Fla. Apr. 26, 2017) (first quoting *Sandsend Fin. Consultants, Ltd. v. Fed. Home Loan Bank Bd.*, 878 F.2d 875, 882 (5th Cir. 1989), then citing 12 U.S.C. § 3410(c)).

Here, as demonstrated, Petitioner does not argue that the SEC has failed to substantially comply with the RFPA, nor that the SEC's inquiry is not a legitimate law enforcement inquiry. Doc. Nos. 1, 2. Instead, each of his contentions concern whether the requested records are relevant to the SEC's inquiry. *Id.* Accordingly, the Court's analysis is so limited. *See, e.g.*, *Hornaday*, 2017 WL 11696742, at *3, *report and recommendation adopted*, 2017 WL 11696741 (M.D. Fla. Apr. 26, 2017) (addressing relevancy alone where that was the only issue addressed by the motion to quash).[3]

"For purposes of an administrative subpoena the notion of relevancy is a broad one. . . . So long as the material requested touches a matter under investigation, an administrative subpoena will survive a challenge that the material is not relevant." *Hornaday*, 2017 WL 11696742, at *3, *report and recommendation adopted*, 2017 WL 11696741 (M.D. Fla. Apr. 26, 2017) (quoting *Sandsend*, 878 F.2d at 882); *see also Harrison v. United States Sec. & Exch. Comm'n*, No. 1:12-CV-2379-ODE-SSC, 2012 WL 13130044, at *9 (N.D. Ga. Aug. 3, 2012) ("The showing of relevance

---

[3] The Court otherwise notes that as set forth in the SEC's verified response, the SEC is conducting a legitimate law enforcement inquiry, and the SEC has demonstrated that it has substantially complied with the requirements of the RFPA. *See* Doc. No. 8, at 4–5, 6.

need not be substantial and any records that touch on a matter under investigation are considered relevant." (citation and quotation marks omitted)).

For the reasons argued by the SEC in its verified response, Petitioner's arguments against subpoena enforcement are unpersuasive. As an initial matter, the SEC has provided a detailed explanation as to how financial records from Wells Fargo would be relevant to its investigation regarding ZenChip and Duke Pro Max. Doc. No. 8, at 3–8. *See, e.g.*, *Hornaday*, 2017 WL 11696742, at *3, *report and recommendation adopted*, 2017 WL 11696741 (M.D. Fla. Apr. 26, 2017) ("Petitioner's bank records are of obvious relevance to the formal investigation into his activities in connection with the Project."); *see also Persaud v. United States Sec. & Exch. Comm'n*, No. 24-MC-0505 (JHR) (RWL), 2025 WL 831115, at *5 (S.D.N.Y. Mar. 17, 2025), *appeal withdrawn*, No. 25-744, 2025 WL 1822668 (2d Cir. Apr. 8, 2025) (finding the relevance standard "easily met" where "[t]he Subpoenas primarily request documents related to [the petitioner's] financial accounts, including those for which the SEC has direct evidence of suspicious monetary transfers and deposits"). Moreover, Petitioner's arguments do not justify quashing the Wells Fargo subpoena.

First, Petitioner argues that he has no business relationship with Duke Pro Max. Doc. Nos. 1, 2. However, as the SEC has demonstrated by its verified response, the investigation is not limited to transactions regarding Duke Pro Max, and it encompasses transactions relating to ZenChip, for which Petitioner has been

identified as an officer. Doc. No. 8, at 3, 9. Petitioner does not dispute in his papers that he is an officer of ZenChip, nor does he deny engaging in transactions with ZenChip. Doc. Nos. 1, 2.[4]  So his first three arguments against enforcement are unavailing. *Cf. Flatt v. U.S. S.E.C.*, No. 10-60073-MC, 2010 WL 1524328, at *4 (S.D. Fla. Apr. 14, 2010) ("[T]his is not a case in which the customer has no connection to the transactions or the entity under investigation, or where a subpoena seeks documents from a multi-national corporation which in no way relate to the investigation.").

Second, Petitioner argues that the subpoena is overbroad because it would require disclosure of personal financial activity, transactions unrelated to the SEC's investigation, and information regarding third parties. Doc. Nos. 1, 2.[5]  But, as the SEC argues in response, its investigation may necessarily be broad because it cannot analyze the transactions and trace funds from an account without broad access to information about funds moving in and out of the account. Doc. No. 8, at 9. Thus, the Court rejects Petitioner's contention that the subpoena is overbroad, as Petitioner has not shown that the bank records would not touch upon the SEC's investigation. *See, e.g.*, *Flatt*, 2010 WL 1524328, at *4 ("[T]he SEC asserts that it is in

---

[4] As the SEC points out, in filings in this case, Petitioner's given email address is "admin@zenchipprime.com." *See* Doc. No. 1, at 3; Doc. No. 2, at 3.

[5] As Petitioner acknowledges, the subpoena is limited in temporal scope beginning January 1, 2023. Doc. No. 1, at 2; Doc. No. 5-1, at 4.

need of the requested bank records to trace the path of the proceeds of the alleged illegal transactions committed by Magnus.  Such funds may have been distributed to other persons or entities through the subpoenaed bank accounts, or may have been handled as pass-through investor funds, and thus would not necessarily be labeled as Magnum transactions.  Thus, it is impossible to ascertain at this juncture which specific bank account transactions involve Magnum proceeds, or to identify the names of all of the persons or entities involved in those transactions.  As such, the Subpoena is not overbroad."); *see also Feiner v. U.S. S.E.C.*, 914 F. Supp. 2d 474, 479 (S.D.N.Y. 2012) ("The scope of the subpoena is not a decision that Movant gets to make.  The fact that the SEC has cast its net broadly and may obtain information that ultimately is not directly relevant to the investigation is, without more, not a basis for the Court to quash or limit the subpoena.").

Finally, Petitioner states that he has fully cooperated with the SEC to date by providing requested information and engaging in communication with investigators.  Doc. Nos. 1, 2.  However, this assertion does not prevent the SEC from issuing a subpoena to Wells Fargo, as "the SEC is not required to accept [Petitioner's] explanations in lieu of its own investigation into how and why those transactions occurred."  *See Harrison*, 2012 WL 13130044, at *10.  *See also Hornaday*, 2017 WL 11696742, at *3, *report and recommendation adopted*, 2017 WL 11696741 (M.D. Fla. Apr. 26, 2017) (finding a "self-serving and bare bones assertion that there is

'nothing to see here' is not sufficient to overcome [a] substantial showing made by the SEC").

## III.   CONCLUSION.

For the reasons discussed herein, Petitioner's Motion for Order Pursuant to Customer Challenge Provisions of the Right to Financial Privacy Act of 1978 (12 U.S.C. § 3410) (Doc. No. 1) is **DENIED**.

**DONE** and **ORDERED** in Orlando, Florida on July 6, 2026.

_Leslie Hoffman Price_

LESLIE HOFFMAN PRICE
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties

-10-